THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 
 
 

v.

 
 
 
 Corey Moss, Appellant.
 
 
 

Appeal From Greenville County
 C. Victor Pyle, Jr., Circuit Court Judge

Unpublished Opinion No. 2007-UP-025
Submitted January 1, 2007  Filed January 17, 2007

AFFIRMED

 
 
 
 Assistant Appellate Defender Aileen P. Clare, of Columbia, for Appellant.
 Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Shawn L. Reeves, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for Respondent.
 
 
 

PER CURIAM:  Appellant, Corey Moss, was indicted for and convicted of distribution of crack cocaine and distribution of crack cocaine within close proximity of a school.  Moss appeals, asserting the trial court erred in ruling the photographic lineup used to identify him was not suggestive.  We affirm.[1]
FACTUAL/PROCEDURAL BACKGROUND
On May 27, 2003, around 4:15 in the afternoon, Officer Patrick Brown posed as a construction worker while working an undercover operation in the Cotton Street area of the city of Greenville.  Officer Brown slowed his vehicle as he drove past three black males and heard someone yell for him to turn around and come back.  The man yelling was a black male, wearing a white t-shirt, baggy jeans and white shoes with red writing.  When Officer Brown drove back up, the man asked him what he wanted.  The officer told him he wanted twenty of that hard, which is street slang for a single hit of crack cocaine.  The man gave Officer Brown a beige rocklike substance in exchange for $20.  Looking in his rear view mirror, he observed the man walk into a house at 5 Cotton Street.  As the officer drove away, he gave detectives Lawson and White a physical description of the suspect through some surveillance equipment.  He described the subject as a black male, about 56 or 57, around 150 pounds, wearing a white t-shirt, baggy denim jeans, and white tennis shoes with red writing.  
Detective Melissa Lawson testified she was in the area of the controlled buy and could hear the transaction take place over audio.  She corroborated the conversation between Officer Brown and the other party, as well as the description that was given by Officer Brown.  After having Officer Brown confirm the description of the suspect, Detective Lawson contacted Corporal Aiken, the community patrol officer for that area, and gave him the description and the location of the purchase.  Corporal Aiken testified, after receiving the description and the area of the transaction, along with the fact that the suspect went to 5 Cotton Street when he left, he immediately told Detective Lawson that Corey Moss fit the description.  He stated Moss was the only individual in that area that fit that description, Moss aunt lived at 5 Cotton Street, and Moss did hang out there often.  After getting a clothing description, Corporal Aiken went to the area and observed Moss walking about fifty yards from where the transaction had occurred.  Moss was wearing a white t-shirt, baggy blue jeans, and white tennis shoes with red marking.  
After Corporal Aiken told her the description fit Corey Moss, Detective Lawson obtained a computer-generated photo array which included Moss picture along with five other males with similar characteristics.  The pictures were randomly placed in one of six slots.  Approximately three to three and a half hours after the purchase, Detective Lawson showed Officer Brown the photo array, telling him the person who sold him crack cocaine may or may not be in the array.  She stated Officer Brown immediately picked out Moss.
Officer Brown testified the individuals in the array were all black males with the same complexion, with similar hair, and about the same age.  He stated he was face to face with the seller, they were close to one another, they were on eye level, he made conversation and eye contact with him, and he got a very good look at the persons face.  Further, Officer Brown indicated he was paying close attention to the individual as he was trained to do, so he could give a good description of him.  Detective Lawson informed him it was a random photo array which may or may not include the subject.  Detective Lawson did not indicate or tell Officer Brown which picture he should select.  Officer Brown stated he did not have to study the array, and that he recognized Moss right off the bat.  He testified he was a hundred percent positive thats the guy.  
Prior to trial Moss moved to dismiss the warrant and quash the indictment based on an alleged improper identification procedure.  The trial court then held a hearing concerning the lineup.  After hearing Officer Browns testimony and reviewing the photo array, the trial court found nothing at all suggestive in [the] lineup and denied Moss motion to quash, noting because the lineup was not suggestive, it need not review the factors set forth in Neil v. Biggers, 409 U.S. 188 (1972). 
LAW/ANALYSIS
On appeal, appellant argues the trial court erred in finding the photographic lineup was not suggestive.  He asserts the lineup was unduly suggestive as (1) his photograph was the first one in the six-picture array, (2) he was the only subject directly facing the camera as all the others were tilting their heads to the viewers right, and (3) the other subjects were more brightly lit than he.  Moss thus contends the lineup and resulting identification should have been suppressed.  
A criminal defendant may be deprived of due process of law by an identification procedure which is unnecessarily suggestive and conducive to irreparable mistaken identification.  State v. Traylor, 360 S.C. 74, 81, 600 S.E.2d 523, 526 (2004).  If a suggestive out-of-court identification procedure created a very substantial likelihood of irreparable misidentification, an in-court identification of the accused is inadmissible.  Id.  The United States Supreme Court has developed a two-prong inquiry to determine the admissibility of an out-of-court identification.  Id.  (citing Neil v. Biggers, 409 U.S. 188 (1972)).  First, the trial court must ascertain whether the identification process was unduly suggestive.  State v. Moore, 343 S.C. 282, 287, 540 S.E.2d 445, 447 (2000).  Next, the trial court must decide whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed.  Id. 
Even if the identification procedure is unduly suggestive, it need not be excluded so long as, under all the circumstances, the identification was reliable notwithstanding the suggestiveness.  Traylor, 360 S.C. at 82, 600 S.E.2d at 527.  Rather, the inquiry then focuses on whether, under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification.  Id.  In evaluating the totality of the circumstances to determine the likelihood of misidentification, the following factors should be considered:  (1) the witnesss opportunity to view the perpetrator at the time of the crime, (2) the witnesss degree of attention, (3) the accuracy of the witnesss prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.  State v. Cheeseboro, 346 S.C. 526, 541, 552 S.E.2d 300, 308 (2001).                 
We first note Moss never moved to suppress the identification evidence.  Rather, Moss moved to quash the indictment and dismiss the warrant based on the allegedly improper identification procedure.  Undoubtedly, Moss is challenging on appeal the admissibility of evidence, not the sufficiency of the indictment or any constitutional basis for quashing the indictment.   Additionally, Moss failed to object to any of the testimony concerning Officer Browns identification of him or the admission of the photo array into evidence.  It is thus questionable whether appellant has properly preserved this argument for our review. See State v. Nichols, 325 S.C. 111, 120-21, 481 S.E.2d 118, 123 (1997)  (An issue may not be raised for the first time on appeal, but must have been raised to the trial judge to be preserved for appellate review.);  State v. Simpson 325 S.C. 37, 42, 479 S.E.2d 57, 60 (1996) (holding, where appellants counsel did not make any objections during the testimony, issue of admissibility of evidence was not preserved for appellate review as a ruling in limine is not a final ruling on the admissibility of evidence and unless an objection is made at the time the evidence is offered and a final ruling made, the issue is not preserved for review).          
In spite of trial counsels motion being one to quash the indictment rather than suppress the evidence, it is clear the trial court held a hearing concerning the lineup, and essentially ruled on the admissibility of the evidence, determining the lineup was not suggestive and the court therefore need not continue evaluation with the Neil v. Biggers factors.  Additionally, Officer Brown was the first witness to testify following the courts ruling on the lineup.  State v. Bowman, 366 S.C. 485, 500-01, 623 S.E.2d 378, 386 (2005) (noting an exception to the rule requiring a contemporaneous objection when evidence is introduced exists where a judge makes an in limine ruling on the admission of evidence on the record immediately prior to the introduction of the evidence in question). 
However, turning to the merits, we find no error in the trial courts determination that the photographic lineup was not suggestive.  First, the only argument Moss raised to the trial court in arguing the lineup was unduly suggestive was that his picture was the first picture in the photographic array.  He never argued to the trial court, as he does on appeal, that he was the only subject directly facing the camera and the other subjects were more brightly lit.  See State v. Shuler, 353 S.C. 176, 187, 577 S.E.2d 438, 443 (2003) ( a party cannot raise one basis in support of a motion at trial and another on appeal).  Further, the record shows that the photo array was computer generated, with the individual photographs randomly placed into one of six places.  We decline to find the mere fact that a defendants photograph is the first one in a photo array renders such a lineup impermissibly suggestive, especially as here, where the order of the photos is randomly selected by computer.  See White v. State, 187 Ga. App. 301, 302, 370 S.E.2d 50, 51 (1988) (finding photographic lineup was not impermissibly suggestive where appellants picture was  in the front and center position in the photo array).  Additionally, we have viewed the lineup in question and agree with the trial court that there is simply nothing suggestive about the lineup.  As in this courts decision in State v. Patterson, 337 S.C. 215, 230, 522 S.E.2d 845, 852 (Ct. App. 1999), none of the six photographs in the lineup stand out from the others.  They are of comparable size and composition, with each subject being similar in appearance, age and physical characteristics.  As well, the record shows Detective Lawson did not suggest to Officer Brown which photograph was of the suspect. 
Finally, even if the lineup were unduly suggestive, Officer Browns identification of Moss was clearly reliable in light of the totality of the circumstances.   First, insofar as the witnesss opportunity to observe the individual at the time of the crime, Officer Brown testified he was on eye level and face to face with the seller, they were close to one another, he made conversation and eye contact with him, and he got a very good look at the persons face.  Further, Officer Brown stated he was paying close attention to the individual as he was trained to do, so he could give a good description of him.  Based on Officer Browns description, Corporal Aiken shortly thereafter traveled to the area and observed Moss walking about fifty yards from where the transaction had occurred wearing a white t-shirt, baggy blue jeans, and white tennis shoes with red marking, just as Officer Brown had described.  Officer Brown testified that he recognized Moss right off the bat and Detective Lawson corroborated Officer Brown immediately picked out Moss.   Officer Brown further indicated he was a hundred percent positive Moss was the individual who had sold him the crack cocaine.  Finally, Officer Brown made the identification of Moss only three to three and a half hours after the purchase.
CONCLUSION
We hold the identification procedure used in this case was not unduly suggestive.  We further hold, even if the lineup were suggestive, Officer Browns pre-trial identification of Moss was reliable in light of the totality of the circumstances.  For the foregoing reasons, appellants convictions are
AFFIRMED.
ANDERSON, HUFF, and BEATTY, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.